689 A.2d 264

**Carl L. SWOPE, Appellant,**

**v.**

**Carole J. SWOPE, Appellee.**

Superior Court of Pennsylvania.

Submitted Oct. 21, 1996.

Filed Jan. 24, 1997.

Donald B. Swope, Hellam, for appellant.

Daniel F. Wolfson, York, for appellee.

Before CAVANAUGH, EAKIN and HESTER, JJ.

EAKIN, Judge.

Carl L. Swope (Father) appeals from an order of the Court of Common Pleas of York County awarding primary physical custody of the couple's two youngest children to appellee Mother, Carole J. Swope. We affirm.

Mother and Father married on March 23, 1980, separated in August 1994 and were divorced on June 20, 1995. Three children were born of the marriage: Daaron, born August 3, 1978; Dennis, born May 23, 1982; and Deanna, born December 25, 1985.

On November 2, 1994, Father petitioned for the legal and physical custody of Daaron, Dennis and Deanna. Mother, Father, Daaron, Dennis and Deanna appeared at a conciliation conference on November 17, 1994 wherein the couple agreed that Father would have majority physical custody of Daaron with partial rights of physical custody in Mother.[1] The conci-

---

1. Daaron is not involved in the instant dispute.

liator's report indicated that Deanna wanted to live with Mother, while Dennis was "non-commital." On November 23, 1995, the court entered an interim order, pending a full custody hearing, whereby Mother and Father would share legal custody of Dennis and Deanna and alternate weeks of physical custody of both children. A licensed psychologist evaluated the parties and filed reports recommending that primary physical custody be granted to Mother.[2]

After a hearing on January 4 and 5, 1996, the court awarded primary physical custody to Mother, effective beginning with the 1996/1997 school year, since Mother has moved a short distance away and the children must change school districts. Father was awarded partial custody on alternating weekends, holidays and every other week during the summer. The parties are to share legal custody.

Father claims the trial court abused its discretion in awarding Mother custody because the children are separated from their older brother Daaron, the children expressed a preference to live with Father, and the children's lives will be disrupted.

 Our scope of review of a trial court's order of child custody is of the broadest type:

'In reviewing a custody order, an appellate court is not bound by findings of fact made by the trial court which are unsupported in the record, nor is it bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where it finds that the custody order is "manifestly unreasonable as shown by the evidence of rec-

---

**2.** The parties agreed the psychologist's reports would be submitted to the court without further testimony after the hearing. Although these reports have not been made part of the certified record, the trial court's order refers to them, noting the psychologist's recommendation was based on the "belief that the mother provides more structure and more parenting than the father." Trial Court Order, 4/22/96, at 4–5. The trial court concurred in this belief, a conclusion which the record supports.

ord ..." will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, an appellate court will not interfere with its order awarding custody.' *E.A.L. v. L.J.W.*, 443 Pa.Super. 573, 579–80, 662 A.2d 1109, 1112 (1995) (quoting *Robinson v. Robinson*, 538 Pa. 52, 55–56, 645 A.2d 836, 837–38 (1994)). The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Id.* at 580, 662 A.2d at 1112.

 Father first contends that the trial court failed to consider the policy against separation of siblings. Although the general rule is that siblings should not be separated without compelling reasons, this policy is only one factor to be considered in determining the best interests of the child. *Cardamone v. Elshoff*, 442 Pa.Super. 263, 279, 659 A.2d 575, 583 (1995).

In the instant case, while not directly addressing this issue, the trial court clearly considered it in discussing the situation of then–17–year–old Daaron, and

> how he has responded to [Father's] input. He is now living with his father and has, essentially, either been kicked out or dropped out of school.
>
> He was essentially truant and Father, at this point, does not have any plans for Darron [sic]. Darron essentially sits around the house and does not have any future plans as to employment and/or obtaining a G.E.D.

Trial Court Order, 4/22/96, at 3. The court was also concerned that Daaron did not really discuss his school problems with Father who, although he knew of Daaron's truancy, in turn did not discuss it with Mother.

The record supports the trial court's concern about two impressionable siblings growing up with, and being influenced by, an older brother who is unemployed, is not in school, has few future plans, and who receives little direction from Father. Moreover, Daaron, now 18, may soon be living on his own, out

of Father's house and away from his younger siblings. The policy against separation of siblings is based on factors normally present in family situations, but belied by the situation herein. The conclusion that daily exposure to the role model provided by Daaron would be a good thing does not leap to mind nearly as quickly as the fear he will encourage his siblings to follow in his footsteps. Under these circumstances, we discern no abuse of discretion or manifest error that would warrant reversal of the custody order on this ground. *See Cardamone, supra.*

█ Next, Father argues that the children expressed a preference to live with him. While Dennis stated that he wanted to "stay with my dad ... [b]ecause I like it over there more," Deanna was never asked in court to state a preference. In fact, according to the conciliator's report, Deanna "wants to live with Mother."

█ The preference of a child in a custody case, although not controlling, is a factor to be carefully considered, as long as it is based on good reasons. *E.A.L.,* 443 Pa.Super. at 590, 662 A.2d at 1117–18. The child's maturity and intelligence must be considered, and the weight to be given the child's preference can best be determined by the judge before whom the child appears. *Cardamone,* 442 Pa.Super. at 278, 659 A.2d at 583.

After the hearing, the trial court observed that

the indication from the children, as well as the parents, established that Father has a rather flexible and lax attitude about the children's discipline and how they conduct themselves at home.

The father and the mother both concur that the father has a great deal of fun being involved in the activities of the children but that essentially he is not one to forward the idea of education nor of structure in discipline. A concern to the Court is the fact that the children seem to be adopting Father's ideas as to where they should be and essentially voice as the reason that they should be with

Father ... the fact that they do have fun and that essentially they do what they want at Father's home.

Trial Court Order, 4/22/96, at 5. The record supports the trial court's findings, and we see no abuse of discretion that would warrant reversal on this ground. *See, e.g., Ellingsen v. Magsamen,* 337 Pa.Super. 14, 486 A.2d 456 (1984) (children's stated preference to remain with their father because of a large yard, a pony, more friends and less noise "lacked a sufficient basis to be accorded controlling weight").

 Finally, Father claims that awarding Mother custody would disrupt the children's lives, primarily because they must change school districts. During the custody hearing, the court specifically asked Dennis if changing schools would be "real bad." Dennis nodded "yes," adding "[b]ecause like I won't be able to meet everybody because all my friends are over at the other school." N.T. 1/5/96, at 162. However, the trial court observed: "You strike me as the kind of young man that can make friends pretty easily," and Dennis acknowledged that he could. *Id.*

While continuity in school is an important factor and must be considered, it, like any other single factor, is not controlling. The trial court recognized that "if custody is changed, the children would have to readjust to a different custodial schedule. If custody is awarded on a primary basis to mother, the children would have to change school districts." Trial Court Order, 4/22/96, at 4. Clearly, the court considered the disruption that attending a new school would occasion for the children but concluded it was necessary in order for their best interests to be achieved. Absent proof of a gross abuse of discretion or manifest error, we must affirm the decision of the trial judge who had the opportunity to observe the demeanor of the parties, including the children, and listen to their testimony.

For these reasons, we must affirm the order of the trial court awarding primary physical custody to Mother.

Order affirmed.