Daniel McALISTER, Appellant,

v.

Mary Beth McALISTER, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 1, 1999.

Filed Feb. 16, 2000.

Elizabeth Weekes, Stroudsburg, for appellant.

John H. Klemeyer, Milford, for appellee.

Before POPOVICH, STEVENS and MUSMANNO, JJ.

STEVENS, J.:

¶ 1 Appellant Daniel McAlister (Father) appeals from an Order granting the Petition for Modification of a custody agreement filed by Appellee Mary Beth McAlister (Mother). We vacate and remand.

¶ 2 The trial court succinctly stated the pertinent facts of this case as follows:

[Father] and [Mother] were married on August 16, 1986 and divorced on November 26, 1996. Two children were born of the marriage, [K.M. and M.M.], who are 11 and 9, respectively. The parties reached an arrangement in 1994 in which they would have a shared custody arrangement with each parent having the children half the week and alternat[e] weekends. That agreement was adopted as an Order of Court on June 1, 1994.

Both parties presently reside in East Stroudsburg, Pennsylvania and the chil-

dren attend school there. Father works in Teterboro, New Jersey and commutes approximately two and [one-half] hours to and from work each day. Mother works in Madison, New Jersey and has a three hour commute to and from work each day. In 1997, Mother filed a Petition for Modification of the custody agreement. The basis of her Petition was that she wanted to relocate to New Jersey so that she could reside one-half hour closer to her workplace. She argued that this shorter commute to work for her would be in the best interests of the children, ostensibly because she could spend more time with them before and after work. At that time, her petition was denied as not having met the test set forth in *Gruber v. Gruber*, [400 Pa.Super. 174] 583 A.2d 434 (Pa.Super.1990).

On May 19, 1998, Mother filed another Petition for Modification of the custody agreement. This second Petition was nearly identical to the previous one in that Mother desires to relocate to New Jersey to be closer to her work place. However, now she is engaged, her fiancé lives in Princeton, New Jersey[,] and they have contracted to buy a house in a nearby community [that is approximately one and a half hours from East Stroudsburg].

Trial Court Opinion, 1/29/99, at 1–2.

¶ 3 The trial court held an evidentiary hearing on Mother's Petition on November 24, 1998, after which the trial court granted Mother permission to relocate to New Jersey with K.M. and M.M. The trial court entered an Order, which stated in pertinent part as follows:

3. [Father] and [Mother] shall share physical custody of their children, [K.M. and M.M.], with Mother having primary physical custody during the school year, under and subject to Father's periods of partial custody on alternate weekends from Friday after school through Sunday at 8:30 p.m. beginning February 5, 1999;

awarding Mother primary physical custody during the school year, subject to Father's periods of partial custody on alternate weekends.

4. Father shall have primary physical custody during the summer school recess beginning at 6:00 p.m. the day following the last day of school through 6:00 p.m. on the Sunday prior to the first day of school[.]

Trial Court Order, 1/29/99, at 10–11. Father then filed this timely appeal.

¶ 4 On appeal, Father raises the following contentions:

(1) Mother failed to establish that her relocation would significantly and directly improve the quality of the children's lives;

(2) Mother failed to establish the proper motive behind her decision to relocate the children; and

(3) the trial court failed to provide a substitute visitation arrangement which will ensure a continuing and meaningful relationship between the children and Father.

Trial Court Opinion, 1/29/99, at 1–2.

¶ 5 When reviewing a trial court's custody order, we are bound by the trial court's factual findings but not by the deductions made or inferences drawn therefrom. *Swope v. Swope*, 455 Pa.Super. 587, 689 A.2d 264 (1997). We will interfere with the trial court's conclusions only if they are unreasonable in view of the trial court's factual findings. *Id.* The paramount concern in a child custody case involving the relocation of one or both parents remains the best interests of the child. *Clapper v. Harvey*, 716 A.2d 1271 (Pa.Super.1998). A determination of a child's best interests is done on a case-by-case basis, and must be premised upon consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual wellbeing. *Alfred v. Braxton*, 442 Pa.Super. 381, 659 A.2d 1040 (1995).

¶ 6 Father essentially is asserting that the trial court erred in finding that Mother met the standards enunciated in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). In *Gruber*, our Court stated that, in every relocation dispute, the trial court must consider:

> [T]he custodial parent's desire to exercise autonomy over basic decisions that will directly affect his or her life and that of the children; a child's strong interest in maintaining and developing a meaningful relationship with the non-custodial parent; the interest of the non-custodial parent in sharing in the love and rearing of his or her children; and finally, the state's interest in protecting the best interests of the children.

*Id.* at 439. Our Court also set forth the following three factors relevant to the determination of whether a custodial parent may relocate to a geographical distance away from the non-custodial parent:

> (1) The potential advantages of the proposed move, economic or otherwise, and the likelihood that [the] move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;
>
> (2) [t]he integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and
>
> (3) [t]he availability of realistic, substitute arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Id.*

¶ 7 Rather recently, in *Thomas v. Thomas*, 739 A.2d 206, 1999 Pa.Super. 249 (*en banc*), this Court held that the factors enumerated in *Gruber* should be considered in cases where the parties share equal physical custody and one party seeks permission to relocate out of the state. This Court specifically held that when a court is "reviewing a request for change of custody and relocation in the context of an equal shared custody arrangement....[*Gruber's*] mandates that the court is to focus on the primary physical custody family, and what is 'advantageous to the primary unit is obviously in the best interests of the children,' is not applicable...." *Thomas*, 739 A.2d at 210–211. Rather, in the context of an equal shared custody arrangement, "there exists two primary family units, and, as such, ... 'both must be scrutinized similarly in the examination of competing custodial environments....'" *Id.* at 211 (*quoting Beers v. Beers*, 710 A.2d 1206, 1209 (Pa.Super.1998) (Montemuro, J., plurality) (holding that where no order awarding primary custody to either parent was in place prior to the mother's request for relocation, the court was permitted to consider the *Gruber* factors, but was required to analyze both of the then current family units)).

¶ 8 In the case *sub judice*, based on the holdings expressed in *Thomas*, the trial court was required to analyze the *Gruber* factors in the context of two competing custodial environments. Having made this determination, it is necessary to decide whether the trial court properly applied the *Gruber* factors to both parties.

¶ 9 With regard to the first *Gruber* factor, that the trial court must consider whether the move will substantially improve the quality of life for the parents and the children, we conclude that the trial court failed to consider the competing economic environments and the non-economic aspects of the competing custodial environments. That is, the trial court failed to consider each parent's job stability, employment opportunities, housing, neighborhoods, etc. *See Thomas, supra.*

¶ 10 With regard to the second *Gruber* factor, that the trial court must consider the parties' motives, we find that the trial court properly found that both parties have pure motives in this case.

¶ 11 With regard to the third *Gruber* factor, that substitute visitation is available, we conclude that the trial court failed to explain how the substitute visitation will "foster the on-going relationship between the children and Father." *Thomas*, 739 A.2d at 213. We find that such an analysis is particularly needed where, as here, Father had equal shared custody and will now be seeing the children only two or three weekends a month and during holidays and summer vacations.

¶ 12 Finally, we conclude that the trial court has not adequately considered, ultimately, the best interest of the children. While the trial court acknowledged that the *Gruber* analysis is but a part of the "best interest of the children" test, the trial court failed to comprehensively examine the best interest of the children. "The trial court improperly limited its analysis to the *Gruber* factors, improperly focused on Mother as a primary custodial parent, and failed to even consider the possibility of the children living with Father." *Thomas*, 739 A.2d at 213. For instance, the trial court failed to make findings regarding Father's and Mother's fiancé's fitness as parents. Moreover, aside from stating that Father takes the children to church on the weekends, the trial court failed to consider Mother's and Father's religions, their mental and physical status, or other factors which legitimately affect the children's physical, intellectual, moral, and spiritual well-being.

¶ 13 Based on the aforementioned, we hold that the custody order must be vacated and this case remanded for a trial court opinion which is complete and comprehensive.

¶ 14 Order vacated; Case remanded; Jurisdiction relinquished.

¶ 15 MUSMANNO, J., files a concurring opinion.

MUSMANNO, J., concurring.

¶ 1 I agree with the well-reasoned majority opinion that the custody order must be vacated and the case remanded to the trial court. As such, I respectfully concur. I write separately because I believe that applying the *Gruber* factors to a shared custody situation, according to our Court's holding in *Thomas v. Thomas*, 1999 Pa. Super 249, 739 A.2d 206 (*en banc*), without first awarding one party primary physical custody, is impracticable.

¶ 2 In *Thomas*, our Court held that the factors enumerated in *Gruber* should be considered in cases where the parties share equal physical custody and one party seeks permission to relocate out of the state. The mother in *Thomas*, who shared physical custody of the parties' children equally with father, filed a petition to relocate and also sought primary physical custody of the parties' three children. The trial court analyzed the *Gruber* factors, granted mother's petition to relocate, and awarded mother primary custody on the basis that mother satisfied the *Gruber* criteria. Because our Court concluded that the trial court improperly analyzed the *Gruber* factors and failed to consider the best interests of the children, our Court vacated the trial court's order and remanded the matter for another hearing. *Thomas*, 1999 Pa.Super. 249, 21–22, 739 A.2d 206.

¶ 3 In a concurring opinion, the Honorable Kate Ford Elliott discussed the trial court's decision to award mother primary physical custody based on its application of the *Gruber* factors. *Thomas*, 1999 Pa.Super. 249, 739 A.2d 206, (Ford Elliott, J., concurring).[1] Recognizing that a shared custodial arrangement can no longer exist after one parent relocates some distance away from the other parent, our colleague recommended that, in a shared custody situation where one party is seeking to relocate, the trial court first should hold a

---

**1.** The Honorable Justin Johnson joined in both the majority and the concurring opinions.

full custody hearing in order to determine which party should be awarded primary physical custody. *Id.* at 7, 739 A.2d 206. If the trial court determines that primary physical custody should be granted to the party seeking to relocate, the *Gruber* factors then would be applied to assess the effect of the relocation on the parties and the children. *Id.* If the trial court determines that primary physical custody should be awarded to the other party, then no *Gruber* analysis would be required. *Id.* I find our distinguished colleague's reasoning persuasive.

¶ 4 In the present case, prior to Mother's relocation, Mother and Father had shared physical custody and the children resided equally with each parent. After granting Mother's Petition, the trial court ordered that Mother have primary physical custody for the entire school year, subject to Father's periods of partial custody on alternate weekends. Depending on the school system, a school year lasts between nine and ten months. As compared to the prior situation where Father equally shared custody of the children, this modification of the parents' custody agreement is a significant disruption of the *status quo.*[2] Although the trial court purported to preserve a shared physical custody arrangement, in granting Mother's Petition, the trial court awarded Mother primary physical custody of the children.

> For a grant of primary custody, the court must assess which parent will best serve the physical, intellectual, spiritual, and moral well being of the children. When making this preliminary determination, the relocation issue should not be a relevant fact. This is so because of the tremendous burden on, and obstacle to, the relocating parent to show that a disruption in the status quo will not be detrimental to the children.

*Thomas,* 1999 Pa.Super. 249, 4, 739 A.2d 206, (Ford Elliott, J., concurring).

¶ 5 In this case, the trial court, in its Opinion, made the following statement: "[w]e do not find that it is in the best interests of these children to lose much of the relationship they have built with their father." Trial Court Opinion, 1/29/99, at 6. The trial court also noted that Mother testified that, regardless of the trial court's decision, Mother would move to New Jersey. *Id.* Although the trial court determined that it was not in the best interests of the children to relocate to New Jersey with Mother, the trial court still awarded Mother primary physical custody based on an analysis of the *Gruber* factors. This conclusion was error.

¶ 6 I recognize that the trial court was faced with a difficult situation. Mother testified that she would relocate to New Jersey with or without the children, and any decision by the trial court would result in a change in the current relationship between Mother, Father and the children. However, without a determination that it would be in the best interests of the children for Mother to be awarded primary physical custody, the trial court's grant of primary physical custody to Mother was error.

¶ 7 Shared physical custody is becoming more prevalent in today's society, and situations such as that presented by the instant case inevitably will occur more frequently. I write separately to emphasize that a shared physical custody agreement cannot be preserved when one party seeks to relocate a significant distance away from the other party. I would follow the majority opinion in *Thomas* for its holding that the *Gruber* factors should be considered in a situation where the parties have equal shared physical custody and one party seeks to relocate. I also agree with the reasoning in the concurring opinion in *Thomas.* I therefore believe that a better result would be that prior to applying the *Gruber* factors, the trial court must first

---

**2.** I note, however, that preservation of the *status quo* is not alone a sufficient reason to deny a petition for relocation. *See Gancas v.*

*Schultz,* 453 Pa.Super. 324, 683 A.2d 1207 (1996).

hear testimony pertaining to which party should be awarded primary physical custody. Only if the trial court determines that primary physical custody should be granted to the party seeking to relocate should the *Gruber* factors be applied to assess the effect of the relocation on the parties and the children.[3] On this basis, I would remand for a hearing for the trial court to determine which party should be granted primary physical custody of the children. If the trial court were to determine that Mother should be granted primary physical custody, the trial court then should apply the *Gruber* factors.

3. This testimony may, of course, be presented at a single hearing.